**Richard REINHARDT (p/k/a Richie Ramone and Richie Beau),**
**Plaintiff,**

v.

**WAL–MART STORES, INC., Apple, Inc., RealNetworks, Inc., Estate of John Cummings (a/k/a John Ramone and Johnny Ramone), Taco Tunes, Inc., Ramones Productions, Inc., Herzog & Strauss, and Ira Herzog, Defendants.**

No. 07 Civ. 8233 (SAS).

United States District Court,
S.D. New York.

April 18, 2008.

Jeff Sanders, Esq., Roberts & Ritholz LLP, New York, NY, for Plaintiff.

Stewart L. Levy, Esq., James E. Doherty, Esq., Eisenberg Tanchum & Levy, New York, NY, of Counsel, Michael D. Friedman, Esq., Troutman Sanders LLP, New York, NY, Curtis B. Krasik, Esq., Kirkpatrick & Lockhart Preston Gates Ellis LLP, Pittsburgh, PA, for Defendants.

### *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Richard Reinhardt (p/k/a Richie Ramone and Richie Beau) brings this action for copyright infringement against Wal–Mart Stores, Inc., Apple, Inc., RealNetworks, Inc., Taco Tunes, Inc., Ramones Productions, Inc., the Estate of John Cummings, Herzog & Strauss, and Ira Herzog (collectively, "Defendants") under the 1976 Copyright Act. He also brings a claim for contributory infringement against the Estate of John Cummings, Ira Herzog, Herzog & Strauss, and Ramones Productions. Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss for failure to state a claim is granted and the case is dismissed.

## II. BACKGROUND

### A. Facts[1]

Richard Reinhardt was a member of the punk band the Ramones[2] from 1983 to 1987.[3] During that time he authored six songs—*Smash You, Somebody Put Something in My Drink, Human Kind, I'm Not Jesus, I Know Better Now,* and *(You) Can't Say Anything Nice* (the "Compositions").[4] He was the sole author of each Composition.[5] Reinhardt filed copyright registration applications for the Compositions with the U.S. Copyright Office sometime before the Complaint was filed.[6]

---

1. The following factual allegations, taken from the Complaint, are accepted as true for purposes of this motion.

2. Formed in 1974, the Ramones' first four albums were "punk cornerstones," fundamental to the development of American and British punk music. John Pareles, *Dee Dee Ramone, Pioneer Punk Rocker, Dies at 50,* N.Y. Times, June 7, 2002. The music of the Ramones is "explicitly juvenile, at once sweetly dumb and knowing, and, above all, blisteringly loud." Jonathan Lethem, *Wanting to Be Joey Ramone,* N.Y. Times, Apr. 20, 2001. Their music was not immediately popular, and the band did not achieve commercial success in its lifetime. They never had a "top 40" hit, and no Ramones album went platinum. With hindsight, critics and fans alike have recognized their contributions to the development of American rock and punk music. The Ramones were inducted into the Rock and Roll Hall of Fame in 2002.

3. *See* Amended Complaint ("Compl.") ¶ 1.

4. *See id.* ¶ 13.

5. *See id.* ¶ 14.

6. *See id.* ¶ 15.

In 1984, Reinhardt entered into a recording agreement ("Recording Agreement") with Ramones Productions,[7] a corporation engaged in the business of "exploiting" the intellectual property, merchandise, and other products associated with the Ramones.[8] The Recording Agreement provided for Ramones Productions to "engage Plaintiff to record with the Ramones."[9] The Recording Agreement also granted Ramones Productions the limited right to "create physical sound recordings embodying the Compositions,"[10] with royalty payments to be made to Reinhardt for his performances on certain Ramones recordings.[11]

Taco Tunes is a corporation engaged in the business of "exploiting musical compositions owned by certain members of the Ramones."[12] The Recording Agreement "contemplates" a music publishing agreement between Reinhardt and Taco Tunes, but no terms were ever agreed to and no contract was completed.[13]

Wal–Mart Stores, Inc. ("Wal–Mart"), Apple, Inc. ("Apple"), and RealNetworks, Inc. ("RealNetworks"), are businesses which, inter alia, distribute sound recordings and other digital media over the Internet and in other electronic forms.[14] Taco Tunes authorized these defendants to electronically distribute and duplicate "non-physical digital copies" of the Compositions.[15]

Herzog & Strauss is a partnership that provides accounting, management, and financial advisory services.[16] Ira Herzog is a partner at Herzog & Strauss.[17] The Estate of John Cummings is the estate of the deceased Ramones lead man, who was known professionally as Johnny Ramone.[18] These defendants, along with Ramones Productions, have controlled in whole or in part, the policies and operations of Taco Tunes for over twenty years.[19]

### B.  Procedural History

Reinhardt filed suit against Defendants on September 21, 2007, for copyright infringement and brought an additional claim against the Estate of John Cummings, Herzog, Herzog & Strauss, and Ramones Productions for contributory infringement of his copyrights. He seeks damages as well a declaratory judgement that he, and not Ramones Productions or Taco Tunes, is the sole owner of all the copyrights to the Compositions.

In a separate action, Reinhardt filed suit against John Cummings, Ira Herzog, Herzog & Strauss, Taco Tunes, Ramones Productions, and others in federal court in the Central District of California. That action was dismissed on jurisdictional grounds, re-filed in state court in New York, and is currently pending.[20] According to Reinhardt, the state action asserts contract and

---

7.  *See id.* ¶ 16.

8.  *Id.* ¶ 9.

9.  *Id.* ¶ 16.

10.  *Id.* ¶ 19.

11.  *See id.* ¶ 16.

12.  *Id.* ¶ 8.

13.  *Id.* ¶ 17.

14.  *See id.* ¶¶ 5–7.

15.  *Id.* ¶ 21.

16.  *See id.* ¶ 11.

17.  *See id.* ¶ 12.

18.  *See id.* ¶ 10.

19.  *See id.* ¶ 23.

20.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 21 n.10.

tort claims related to Defendants' "non-payment of royalties attributable to the lawful use of the Compositions under the Express License."[21]

## III. APPLICABLE LAW

### A. Rule 12(b)(1)—Subject–Matter Jurisdiction

■■■ Federal courts have original and exclusive jurisdiction over cases arising under the Copyright Act.[22] However, a case does not automatically fall within the jurisdiction of the federal courts simply because it concerns a copyright.[23] If the dispute is about the ownership of a copyright, and turns on the interpretation of a contract, then no federal question is presented. Unless the complaint asserts a remedy expressly granted by the Copyright Act, such as damages for infringement, or requires interpretation of the Copyright Act, there is no federal jurisdiction.[24] In these types of cases, "the line between contract interpretation and statutory interpretation is not always clear."[25]

### B. Rule 12(b)(6)—Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[26] and "draw all inferences in the light most favorable to the non-moving party...."[27] Nevertheless, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness."[28]

■■■ In deciding a motion to dismiss, the court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[29] However, "before materials outside the record may become the basis for a dismissal ... it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[30]

■■■ "Federal Rule of Civil Procedure 8(a)(2) requires ... 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[31] To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[32] Although the complaint need not provide "detailed factual allegations,"[33] it must "amplify a claim

---

**21.** *Id.* at 21.

**22.** *See* 28 U.S.C. § 1338(a).

**23.** *See Jasper v. Bovina Music, Inc.,* 314 F.3d 42, 46 (2d Cir.2002).

**24.** *See id.*

**25.** *Id.*

**26.** *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1975, 167 L.Ed.2d 929 (2007) (quotation marks omitted). *Accord In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007).

**27.** *In re NYSE Specialists,* 503 F.3d at 95.

**28.** *Id.* (quotation marks omitted).

**29.** *ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

**30.** *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006).

**31.** *Erickson v. Pardus,* —— U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting Fed.R.Civ.P. 8(a)(2)).

**32.** *See Bell Atl.,* 127 S.Ct. at 1970.

**33.** *Id.* at 1964. *Accord ATSI,* 493 F.3d at 98 n. 2 (applying the standard of plausibility outside *Bell Atlantic*'s anti-trust context).

with some factual allegations ... to render the claim *plausible.*"[34] The standard is no longer that a complaint can be dismissed only if there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[35] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[36]

## C. Copyright Infringement

■ Section 102 of title 17 of the United States Code provides copyright protection to "original works of authorship fixed in any tangible medium of expression," including musical works and accompanying words.[37] Moreover, under the Copyright Act, copyright in a protected work "vests initially in the author or authors of the work."[38] The Second Circuit has held that "copyright ownership is a 'bundle of discrete rights' regarding the owner's ability to use his property."[39] Additionally, a copyright owner may bring an infringement action against those who exploit her work without permission or assignment.[40] A copyright owner may convey the rights, either temporarily or permanently, to another, although the copyright owner may not convey more than the copyright protects.[41]

■ To succeed on a claim for infringement under the Copyright Act, "a plaintiff must show that (a) he owned a valid copyright to the songs and (b) defendants copied original constituent elements of these songs."[42] "[W]here an author brings an infringement action against a purported licensee, the license may be raised as a defense."[43] When the dispute is over whether a license exists, the alleged infringer has the burden of proving its existence.[44] However, determining whether a defendant's activities fall within the scope of an existing license essentially involves a question of contract interpretation.[45] If the contract language is unambiguous and conveys a definite meaning, its interpretation is a question of law for the court. However, if "'the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another,' then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible."[46] In situations where the dispute is only over the scope of the license, "'the copyright owner bears the burden of prov-

---

**34.** *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in original).

**35.** *Bell Atl.*, 127 S.Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

**36.** *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S.Ct. at 1965).

**37.** 17 U.S.C. § 102(a).

**38.** 17 U.S.C. § 201.

**39.** *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007) (quoting *Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 35 (2d Cir.2005)).

**40.** *See id.* at 98–99 (citing 17 U.S.C. § 501(b)).

**41.** *See id.* at 99.

**42.** *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390 (2d Cir.2007).

**43.** *Tasini v. New York Times Co.*, 206 F.3d 161, 170–71 (2d Cir.2000).

**44.** *See id.* at 171.

**45.** *See Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995).

**46.** *Id.* at 629 (quoting *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)).

ing that the defendant's copying was unauthorized.' " [47]  Because "interpretation of a contract is generally a question of law," [48] it is " 'suitable for disposition on a motion to dismiss.' " [49]

▮▮▮▮  The Second Circuit continues to rely, in part, on *Bartsch v. Metro–Goldwyn–Mayer, Inc.*,[50] for determining whether the use of a new technology is covered by an existing license.[51]  The preferred approach, used in *Bartsch* and reaffirmed in *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, is " 'that the licensee may properly pursue any uses that may reasonably be said to fall within the medium as described in the license.' " [52]  This "new-use" analysis relies on neutral principles of contract interpretation—if a license is more reasonably read to benefit one party, that party should be able to rely on it.[53]  A party seeking a departure from the most reasonable reading of the contract bears the burden of supporting its interpretation of the contract.[54]

## D.  Contributory Infringement

▮▮▮▮  " '[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.' " [55]  Contributory infringement includes personal conduct that encourages or assists the infringement.[56]  There can be no contributory infringement absent actual infringement.[57]

## IV.  DISCUSSION

### A.  Subject–Matter Jurisdiction

▮▮▮  Defendants argue that the Complaint should be dismissed for lack of subject-matter jurisdiction in light of Reinhardt's pending state court action.[58]  Defendants contend that Reinhardt's true grievance involves monies allegedly not paid to him under the Recording Agreement, not copyright infringement.[59]  Additionally, Defendants claim that Reinhardt cannot bring two suits against identical defendants—one for improperly collecting royalties attributed to lawful

**47.**  *Tasini*, 206 F.3d at 171 (quoting *Bourne*, 68 F.3d at 631).

**48.**  *Revson v. Cinque & Cinque*, 221 F.3d 59, 66 (2d Cir.2000).

**49.**  *OBG Technical Servs. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F.Supp.2d 490, 514 (D.Conn.2007) (quoting *Kohl's Dep't Stores v. Rongrant Assocs.*, No. 04 Civ. 4907, 2005 WL 1263613, at *1 (E.D.N.Y. May 27, 2005)).

**50.**  391 F.2d 150 (2d Cir.1968).

**51.**  *See Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 487–88 (2d Cir.1998).  "Disputes about whether licensees may exploit licensed works through new marketing channels made possible by technologies developed after the licensing contract—often called 'new-use' problems—have vexed courts since at least the advent of the motion picture." *Id.* at 486.

**52.**  *Id.* at 486–87 (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.10(b)).

**53.**  *See id.* at 487.

**54.**  *See id.* at 488.

**55.**  *Nat'l Geographic Enterp.*, 409 F.3d at 40 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)).

**56.**  *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir.1998).

**57.**  *See Nat'l Geographic Enterp.*, 409 F.3d at 40.

**58.**  *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss at 18.

**59.**  *See id.*

use and the other for unlawful copyright infringement of the same works.

■■■ Reinhardt has properly alleged a federal claim. Reinhardt has alleged that Defendants have infringed his copyright by exceeding the scope of their license. Accordingly, he seeks damages for copyright infringement under the Copyright Act. That Reinhardt has other grievances with Defendants related to the same Recording Agreement does not bar his right to seek remedies in federal court for alleged violations of the Copyright Act. Because Reinhardt has properly alleged a cause of action arising under the Copyright Act, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

### B. Copyright Infringement

■■■ Reinhardt alleges that Defendants have infringed his copyright through their "exploitation of the Compositions" in digital formats, without his permission.[60] In their motion to dismiss, Defendants rely on the plain language of the Recording Agreement to argue that their use of the Compositions, in a digital format, is licensed by Reinhardt. Because the Recording Agreement is heavily referenced by Reinhardt in the Complaint, it is incorporated by reference and I will consider it on this motion to dismiss.[61]

In pertinent part, section 5(a) of the Recording Agreement authorizes Ramones Productions "to manufacture, advertise, sell, distribute, lease, license or otherwise use or dispose of the Masters and phonograph records embodying the Masters, in any or all fields of use, by any method now or hereafter known." [62]

The Recording Agreement also provides that " 'Records,' 'phonograph records,' 'recordings,' and 'derivatives' means all *forms of reproduction* including pre-recorded tapes and discs and electronic video recordings, *now or hereafter known,* manufactured or sold primarily for home use, school use, juke box use or use on means of transportation...." [63] "Master" however, is specifically defined as "the equivalent of a 7 inch, 45 rpm, single-sided recording embodying the recorded performances by the Ramones." [64]

This language is clear and unambiguous and conveys a definite meaning. The contractual language defining "phonograph records," when read together with the provisions of section 5(a), clearly authorizes the digital uses employed by Defendants. The phrase "now or hereafter known," when referring to forms of reproduction, reveals that future technologies are covered by the agreement.[65] This language creates an expansive rather than a restrictive conveyance of rights. It is not reasonable to construe the phrase "all forms"

---

**60.** Compl. ¶ 28.

**61.** *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153–53 n. 4 (2d Cir.2002) (holding that contracts between plaintiff and a recording company were properly considered by the district court because the amended complaint was "replete with references to the contracts and requests judicial interpretation of their terms").

**62.** 8/1/84 Recording Agreement ("Recording Agreement"), Ex. F. to Affidavit of Stewart L. Levy, defendants' counsel, at 61.

**63.** *Id.* at 58 (emphasis added).

**64.** *Id.* at 57.

**65.** When the parties intended to limit the definition of a certain term to a specific physical medium they did so, defining "Master" as a "7 inch, 45 rpm, single-sided recording," and "LP" as "12 inch, 33–1/3 rmp, long playing doublesided phonograph record." *Id.* "Phonograph records" has no such limiting language. Instead, it refers broadly to "all *forms* of reproductions." *Id.* at 58.

"now or hereafter known" to exclude Defendants' alleged digital download form, which now constitutes a form of reproduction. This unambiguous language forecloses other interpretations and the need to consider extrinsic evidence.[66]

Additionally, this result is consistent with the "new-use" analysis of *Boosey & Hawkes*. The Recording Agreement is more reasonably read to convey to Ramones Productions the right to sell and distribute the "phonograph records" through new technologies, including digital formats. The language authorizes use in "all forms," "now or hereafter known." [67] The most reasonable reading of this language supports Defendants' use in digital form.

Reinhardt argues that the license refers only to "all forms" that are "manufactured or sold," and digital downloads do not fall within its purview because they are transmitted and licensed to end users rather than manufactured or sold.[68] This argument is without merit. The distinction Reinhardt attempts to draw departs from the most reasonable reading of the contract and he therefore bears the burden of justifying this departure. Reinhardt has failed to meet this burden, particularly because he alleges that the digital recordings were sold, contradicting his own argument that digital recordings are licensed but not sold.[69] Accordingly, the claim for copyright infringement is dismissed as a matter of law.

## C. Contributory Infringement

Reinhardt also alleges that the Estate of John Cummings, Herzog & Strauss, Herzog, and Ramones Productions knowingly and willfully directed the policies, activities, and operations of Taco Tunes, which is one of the parties that allegedly infringed on Reinhardt's copyright.[70] Because I hold that there is no copyright infringement, there cannot be any contributory infringement. Therefore, that claim is dismissed. Additionally, because there is no copyright infringement or contributory infringement, I need not address whether the claims are barred by the statute of limitations or the doctrines of laches, estoppel or implied consent.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion [No. 5 on the docket] and this case.

SO ORDERED.

---

66. *See Boosey & Hawkes Music Publishers, Ltd.*, 145 F.3d at 486 (holding that a 1939 agreement conveying the right "to record [the composition] in any manner, medium or form" for use "in [a] motion picture" was sufficiently broad to include distribution in video format). *Accord Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir.1999) (holding that the right to use musical compositions "in any or all fields of use, by any method now or hereafter known, throughout the world" was sufficiently broad to include a digital sample).

67. Recording Agreement at 58.

68. *See* Pl. Mem. at 11–12.

69. As Defendants note, Reinhardt alleges in the Complaint that Apple, Wal–Mart, and RealNetworks "continuously sold and offered to sell digital recordings" of the Compositions. Compl. ¶¶ 24–26. *See* Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss at 4.

70. *See* Compl. ¶¶ 32–33.